BATTISTA J. CASTOLDI *v.* HARTFORD COUNTY MUTUAL FIRE INSURANCE COMPANY ET AL.

SUPERIOR COURT      HARTFORD COUNTY      FILE NO. 110330

Memorandum filed March 13, 1959

*Heffernan & Heffernan,* of West Hartford, for the plaintiff.

*Gross, Hyde & Williams,* of Hartford, for the defendants.

COTTER, J. The plaintiff claims he carried fire insurance on a building and contents owned by him known as the Somers Inn, Main Street, Somers, Connecticut. The aggregate coverage claimed, distributed among the six defendant insurance companies, is $56,000 on the building and $8000 on the contents. In addition to the above policies, there was in existence a fire policy issued by The Home Insurance Company in the amount of $25,000.

The present defendants deny any coverage and in special defenses claim concealment, fraud, and failure to follow requirements in case loss occurs. A claim of incendiarism has been withdrawn. The policies concerned herein also provided that each company was liable for its pro rata share of any loss within the coverage of its policy as well as apportionment as to all insurance upon the property.

The plaintiff, a general building contractor, took over the inn in his name from Helen F. Konrad on December 24, 1956. Mrs. Konrad had had a contract with Castoldi for certain construction work in connection with the premises. She fell behind $12,016.50 in payments under the contract, as a consequence of which he took the conveyance and assumed a first mortgage to Christi Connos of $24,795.20 and a second mortgage of $9664. There was also a chattel mortgage for $3419.19. This obviously was a forced conveyance, not one between a willing seller and buyer. On October 1, 1956, all the property was assessed at $48,667. In 1945 and 1946 the property was owned by Mr. Gerish and Mr. Ronaldson, who operated it as the Geron Inn. They remodeled and renovated the building, which had been originally erected September 13, 1882, and spent approximately $35,000 in such renovation. In addition, they furnished the inn with very expensive furniture and accessories. Gerish got into difficulties not connected with the inn and sold it to Connos for $50,000 in 1947. Connos added additional furnishings and improved the premises, spending more than $6000. Connos sold the inn to Catherine Farr for $41,000, although another party offered him $48,000. Mrs. Farr sold it to Helen Konrad in 1955 for $50,000. In addition, she paid $2000 to $3000 to repair the property. At the time Castoldi took over the property, the new wing was under construction, which enhanced the value of the whole property. He also expended $2903.84 in renovation after he took title to the property and claims he gave a third mortgage to his wife for moneys advanced.

The insurance was ordered from the agent of the defendant companies, at which time the plaintiff informed the agent that he was about to form a corporation. The policies which were issued to Castoldi Building Company Corporation on December 31,

1956, and countersigned January 14, 1957, contained a mortgage clause to Christi Connos "and second" to Mortgage Investment Exchange. J. Edward Stimpson, the agent, was familiar with the inn property and with Castoldi. Castoldi began the formation of a corporation by certificate of incorporation dated December 29, 1956, but did not proceed any further because his accountant advised him against it for tax purposes and he abandoned the plan, which was communicated to the agent. The original policies were mailed to Christi Connos by Stimpson, the agent.

On February 24, 1957, the building and contents were destroyed by fire. The companies were notified and the plaintiff, a day or two after the fire, participated in conferences with representatives of the defendants relative to the loss. Sworn proofs of loss dated April 20, 1957, were received by the defendants on April 22, claiming actual cash value of the property and the loss was in excess of $100,000. These were rejected on May 2 by the companies. Certain plans and appraisals were also given the companies and rejected by them. Thereafter, the plaintiff submitted to examination under oath for the companies, at which time these matters were examined at great length. The plaintiff hired various appraisers in preparing the necessary documents which he submitted in connection with the policy requirements.

There was no intention to set up a fictitious or nonexistent corporation. The agent knew of the situation of the plaintiff at the time the insurance was ordered, and the evidence does not indicate lack of good faith or any intention upon the part of the plaintiff to mislead the defendants as to the identity of the insured under the policies. Likewise, the mortgage clause was correctly, fully and accurately written and at the time of the loss $24,795.20 was

owed to the named first mortgagee Connos, to whom the original policies had been sent, and $9652.50 to the named second mortgagee. Full disclosure at the time was given, the situation was known by the agent, and under the circumstances one can find no concealment or material misrepresentation. *Fosdick* v. *Norwich Marine Ins. Co.,* 3 Day 108; *Essex Savings Bank* v. *Meriden Fire Ins. Co.,* 57 Conn. 335. The policy is not void merely because the insured is not a legal corporation. *Holbrook* v. *St. Paul Fire & Marine Ins. Co.,* 25 Minn. 229, 232; *Bon Aqua Improvement Co.* v. *Standard Fire Ins. Co.,* 34 W. Va. 764, 769. Nor was the situation as to continued, full occupancy as an inn fatal. Such occupancy may be procured within a reasonable time. *Hough* v. *City Fire Ins. Co.,* 29 Conn. 10, 24.

Courts have followed several tests or criteria of "actual cash value"; 45 C.J.S. 1012; and generally, it may be said that the proper test in a particular case depends upon the nature of the property insured, its condition, and other circumstances existing at the time of the loss. Note, 61 A.L.R.2d 711, 715. Where market value can be readily determined, it has been frequently applied. 15 Am. Jur. 530, § 122. In some cases, under the existing circumstances, where market value would fail properly to indemnify the insured, the court has refused to apply this test even though it would ordinarily apply such a criterion. *Connecticut Fire Ins. Co.* v. *Youngblood,* 199 Okla. 227, 230. The replacement or reproduction cost of the property lost is another test employed. 29 Am. Jur. 891, § 1186. A third method, in order to effectuate more complete indemnity, has been used by the courts and has been described as "the broad evidence rule," wherein any evidence logically tending to a correct estimate of the value of the property lost may be considered. *Pinet* v. *New Hampshire Fire Ins. Co.,* 100 N.H. 346, 349.

Market value is not a proper criterion of the actual cash value of buildings insured to that extent at the time of damage or loss, according to what would be the majority view. Note, 61 A.L.R.2d 711, 725. And market value has been rejected as a test of the actual cash value of household furniture. *Fedas* v. *Ins. Co.*, 300 Pa. 555, 564; *Featherston* v. *Hartford Fire Ins. Co.*, 146 F. Sup. 535, 539 (refusing to measure value of a chattel according to the value in the secondhand market but by the value of its use to the owner who suffered from its deprivation); see also *McAnarney* v. *Newark Fire Ins. Co.*, 247 N.Y. 176, 181, 56 A.L.R. 1149; *Saporiti* v. *Austin A. Chambers Co.*, 134 Conn. 476, 479.

Varying estimates of value have been made herein in addition to those values already noted above in connection with the assessment, prior conveyances and sales. William E. Chambault, an appraiser who prepared an estimate for the proofs of loss and also testified in court, claimed a total fire loss as to the building in the amount of $131,480, while another estimate from the C. J. Francis Construction Company placed the loss at $128,272.95. George R. Johnson and Anthony Oberhaus, who testified for the defendants, placed the loss at $40,000 plus $2000 for the addition under construction, and $39,000 plus $1000 for the addition, respectively. Their opinions for reproduction were close to that of the experts for the plaintiff but they deducted a greater amount for depreciation and obsolescence. Considering the nature of the building, its condition and the circumstances, described above, existing at the time of the loss, the actual cash value of the loss to the main building is $40,000 and that to the addition $3000, making a total damage loss of $43,000 for the building. The value of the loss to the contents is in excess of the coverage of the policies, i.e., $8000 from

all of the evidence presented, which was considerable.

Any overvaluation by the insured was apparently arrived at from opinions given him by his so-called experts. It does not appear to have been made with the intent to deceive, and the companies did not rely on it to their prejudice so as to prevent a recovery. Vance, Insurance (3d Ed.) § 143; 4 Appleman, Insurance Law & Practice § 2602. Fraud or false swearing, to work a forfeiture, must be wilful and with intent to deceive and defraud the insurer and must be proved by clear and convincing testimony. *Chauser* v. *Niagara Fire Ins. Co.*, 123 Conn. 413; *Davis-Scofield Co.* v. *Reliance Ins. Co.*, 109 Conn. 686, 689; *Jay-Bee Realty Corporation* v. *Agricultural Ins. Co.*, 320 Ill. App. 310, 319; 46 C.J.S. 524, § 1355; Vance, op. cit., § 143; 29 Am. Jur. 850, § 1132. The insured may bring suit after there has been a denial of all liability and a peremptory refusal to pay under any circumstances, as was made in the instant case. *Norwich & N. Y. Transportation Co.* v. *Western Massachusetts Ins. Co.*, 34 Conn. 561, 570; *Peerless Hosiery Co.* v. *Northern Ins. Co.*, 108 F. Sup. 52, 53, aff'd, 199 F.2d 957.

Judgment may enter for the plaintiff to recover $4000 from the Insurance Company of North America and $4000 from the American Guarantee and Liability Insurance Company for the loss of furniture, fixtures and supplies and all other contents. Judgment may enter for the plaintiff to recover a pro rata and apportioned amount based upon a loss of $43,000 from all the defendants. *Church of the Assumption* v. *Travelers Fire Ins. Co.*, 146 Conn. 223; *Schmaelzle* v. *London & Lancashire Fire Ins. Co.*, 75 Conn. 397; *Hartford Steam Boiler Inspection & Ins. Co.* v. *Firemen's Mutual Ins. Co.*, 110 Conn. 332. The aggregate insurance coverage on the building, distributed among the six defendants and The Home

Insurance Company, is $81,000; therefore, fifty-six eighty-firsts of $43,000, the actual cash value found by the court, amounts to $29,728.40, to be divided pro rata among the defendants.

The issues are found, and judgment may enter, for the plaintiff against the defendants as follows: Hartford County Mutual Fire Insurance Company, $5308.64; Springfield Fire and Marine Insurance Company, $5308.64; Insurance Company of North America ($1592.59 plus $4000 coverage on contents), $5592.59; American Guarantee and Liability Insurance Company ($1592.59 plus $4000 coverage on contents), $5592.59; Illinois Fire Insurance Company, $7962.97; Hartford Fire Insurance Company, $7962.97—making a total judgment of $37,728.40 in accordance with the foregoing.