[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case was tried to a jury, which rendered a verdict, in favor of the plaintiff, Ellen Peck, against the three defendants, Rattlesnake Ventures, Inc., ("Rattlesnake"), William Opper, ("Opper"), and South Norwalk Re-Development Limited Partnership ("South Norwalk"). The plaintiff's complaint was in eleven counts, the substance of which complaint was that the defendants were guilty of negligence perse in the operation of a restaurant and bar, that they had intentionally or negligently inflicted emotional distress upon the plaintiff, and that the defendants were guilty of a violation of Connecticut Unfair Trade Practices Act ("CUTPA"). The factual issues in the case were the alleged violation of the Norwalk Noise Ordinance by the defendants in allowing loud music to emanate from the restaurant causing excessive noise and vibration to permeate the plaintiff's condominium apartment directly above the restaurant, and the making of obscene and vulgar remarks to the plaintiff, and the spreading of grease in the stairway to the plaintiff's apartment. There was also a claim that the defendant Opper threatened the plaintiff with physical violence in a phone message left on the plaintiff's answering machine at her home.
It is important in this case, as will be seen, to give CT Page 13845 attention to the jury verdict form supplied to and used by the jury in rendering its verdict. The jury, as shown by the verdict form, awarded total damages of $225,000 against Rattlesnake and Opper on Count One and Count Five for the negligence per se of those defendants. On Counts Two and Three, against Rattlesnake alone, the jury granted $200,000 for "negligent or intentional infliction of emotional distress". In counts Six and Seven, the jury found in favor of the plaintiff against Opper alone in the amount of $200, 000 for negligent or intentional infliction of emotional distress.[1] South Norwalk had been defaulted earlier in the case, and the jury found damages against it in the amount of $250,000. The allegations against the defendant South Norwalk were negligence per se for violation of the noise ordinance, negligent infliction of emotional distress, and violation of CUTPA (Counts Nine, Ten and Eleven respectively).
After the jury verdict, the defendants[2] timely filed the following: (1) Motion for remittitur, (2) motion to set aside verdict and for judgment in accordance with motion for directed verdict, (3) motion to set aside verdict pursuant to § 16-35, and (4) motion for articulation and/or clarification of verdict.
Some further procedural history is necessary to understand the issues in this case. The trial of this case initially began in front of another jury and another judge. The operative complaint at that time was dated August 29, 1994 and alleged that the acts and conduct of the defendants in allowing noise and vibration from the music played in Rattlesnake was per se
negligent because it violated the Norwalk Noise Ordinance. The complaint also alleged that these acts constituted intentional and/or negligent infliction of emotional distress upon the plaintiff. In the course of the trial, the plaintiff attempted to elicit testimony concerning additional acts of the defendants consisting of vulgar, obscene and abusive language addressed to the plaintiff by the employees of Rattlesnake, the spreading of grease by employees on the stairwell of the plaintiff's condominium complex above the restaurant, and threats of physical violence by Opper by way of a telephone message left on the plaintiff's answering machine. The defendants objected because these acts were not alleged in the plaintiff's revised complaint. The trial judge granted a continuance, ordering the plaintiff to amend her complaint, and allowing depositions to be taken regarding the additional acts. Later, the judge ordered a mistrial and recused himself from the case. CT Page 13846
The plaintiff amended her complaint on June 1, 1998, alleging acts other than violation of the noise ordinance, and consisting of allegations of the conduct described above. The plaintiff claimed that these acts constituted the intentional and/or negligent infliction of emotional distress.
In their various motions, the defendants asked the court to set aside the verdict or grant remittiturs as to Counts One and Five (against Rattlesnake and Opper for negligence per se) because there was insufficient evidence that they violated the ordinance, that the ordinance is unconstitutional, that there was no basis on which the jury could have awarded economic damages of $25,000, and because the award for non-economic damages in the amount of $200,000 was excessive.
 I.
The defendants claim of insufficient evidence for a finding of negligence per se is baseless. There was extensive testimony by police officers and by experts that noise levels were taken in the plaintiff's unit and that the levels substantially violated the allowable limits of the ordinance in the zoning district in which the plaintiff's unit was located.
With respect to the constitutionality of the ordinance, the defendants have made no serious arguments, have presented no facts and have cited no law to substantiate that claim. Their claim is purely conclusory and there is no basis upon which a court, or jury, could find the ordinance unconstitutional.
The defendants also challenge the finding of the jury of economic damages of $25,000. The court clearly charged the jury with respect to damages they might find if they found the defendants negligent.[3] The only evidence of economic damages was as to the loss of property value as a result of the loud noise and vibrations which would have to be endured by any purchaser of the plaintiff's property. This evidence came from the plaintiff who testified that her opinion of market value before the violation of the ordinance was $130,000, and that thereafter her unit was worth $80,000, that is, a diminished value of $50,000. "It is well settled that an owner of property is competent to testify as to its market value." Misisco v.LaMaita, 150 Conn. 680, 684, 192 A.2d 891 (1963). The plaintiff had occupied her property for some time and had the opportunity of becoming acquainted with its value. The defendants had the CT Page 13847 opportunity of testing the plaintiff's knowledge of the value on cross examination or to present its own evidence as to value. The weight to be given to the testimony was for the trier to decide.Id., 684. Diminished value may also be established by the opinion of an owner of property if, based on all the evidence, the trier finds the opinion credible. See, McCahill v. Town CountryAssociates, Ltd., 185 Conn. 37, 41, 440 A.2d 801 (1981). The jury here found the diminished value of the plaintiff's property to be $25,000. It is axiomatic that a jury is not compelled to accept fully the testimony of a witness, and it was entitled here, upon all the evidence the case, to conclude that the plaintiff had sustained an economic loss due to the conduct of the defendants of $25,000.
The defendants next claim with respect to the jury verdict on Counts One and Five that the award of $200,000 for non-economic damages was excessive.
A trial judge has the duty to set aside a verdict and grant a new trial when he or she finds the verdict to be so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or were governed by ignorance, prejudice, corruption or partiality. Birgel v. Heintz, 163 Conn. 23, 27,301 A.2d 249 (1972). The ultimate test which must be applied to the verdict by the trial court is whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption. Birgel v. Heintz, supra, 28; Briggs v. Becker,101 Conn. 62, 124 A.2d 826 (1924). It is the court's duty to set aside the verdict where it finds that it does manifest injustice and is . . . palpably against the evidence. Malmberg v. Lopez,208 Conn. 675, 679-80.546 A.2d 284 (1988). If the amount awarded shocks the sense of justice as to what is reasonable, then the inferred conclusion is that the jury was misguided in reaching its decision. Id., 680.
Nevertheless, "[l]itigants have a constitutional right to have factual issues resolved by the jury . . . This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair minded persons as to the amount that should be awarded . . . This right is one obviously immovable limitation on the legal discretion of the court to set aside the verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to CT Page 13848 which there is room for a reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court . . . The amount of damage award is a matter peculiarly within the province of the trier of fact, in this case, the jury . . ." (Citations omitted, internal quotation marks omitted). Mather v. Griffin Hospital, 207 Conn. 125,138, 540 A.2d 666 (1988).
The jury could reasonably have found that the violations of the noise ordinance continued for years, that often the noise and vibration was so loud that the plaintiff could not enjoy watching television, or talk on the telephone. The vibrations were such that the plaintiff's dishes were at time caused to clank in the kitchen cabinets, and she was unable to sleep. The court charged the jury on compensation for non-pecuniary loss, such as mental pain and suffering, anxiety and anguish, and there was sufficient evidence for the jury to make an award for these damages. The amount of $200,000, though generous, does not so shock the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption.Birgel v. Heintz, supra, 163 Conn. 28.
For the foregoing reasons, the defendants' motions to set aside the verdict and for remittitur are denied as to the jury verdict on Counts One and Five.
 II.
The defendants' post-judgment motions also challenge the court's allowing the plaintiff's amended complaint to stand and its failure to charge the jury on the statute of limitations. As noted heretofore, the plaintiff amended her complaint, after a continuance was granted in the aborted trial, to include additional acts allegedly constituting intentional and/or negligent infliction of emotional distress. The defendants contend that recovery on the claim involving these acts is barred by the statute of limitations because they were first alleged in the amended complaint of June 1, 1998, and were thus time barred. There seems to be no dispute that these additional acts occurred more than two years prior to June 1, 1998.[4] The issue for the court to decide, therefore, is whether the additional acts arose out of the same cause of action and date back to the original complaint or whether these acts stated a new and different cause of action. CT Page 13849
"A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. A right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitute the cause of action. A change in, or an addition to, a ground of negligence or an act of negligence arising out of the single group of facts which was originally claimed to have brought about the unlawful injury to the plaintiff does not change the cause of action. It is proper to amplify or expand what already has been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same, but where an entirely new and different factual situation is presented, a new and different cause of action is stated. ." (Citations omitted; internal quotation marks omitted). Sharp v. Mitchell, 209 Conn. 59, 71,546 A.2d 846.(1988).
To determine whether the new allegations relate back to the original complaint, it is necessary to examine the original and amended complaints in some depth. In the plaintiff's original (revised) complaint dated August 29, 1994, the allegations of intentional and emotional infliction of emotional distress contained in Counts Two, Three, Six and Seven are described in paragraph 9 of Count Two, in paragraphs 9 and 10 of Count Three, and in paragraph 12 of Counts Six and Seven.[5] In this August 29, 1994 complaint, paragraph 9 of Count Two reads as follows:
 "The intentional refusal of the Rattlesnake, its agents and employees to take corrective measures to reduce or eliminate the excessive noise and vibration emanating from the Leased Premises into Ms. Peck's residence constitutes the intentional infliction of emotional distress upon Ms. Peck, in that said defendant knew or should have known, that severe emotional distress would likely be caused by its extreme and outrageous conduct."
Paragraphs 9 and 10 of Count Three read as follows:
 "9. The Rattlesnake and its agents and employees knew or should have realized that its conduct in continuing to allow excessive noise and vibration to regularly emanate from the into and throughout Ms. Peck's residence involved an unreasonable risk of CT Page 13850 causing Ms. Peck emotional distress, and from the facts known to the Rattlesnake or its agents, should have realized that the emotional distress might result in illness or bodily harm to Ms. Peck.
 10. The refusal of the Rattlesnake, its agents and employees to take corrective measures to reduce or eliminate the excessive noise and vibration regularly emanating from the Leased Premises into Ms. Peck's residence constitutes negligent infliction of emotional distress upon Ms. Peck."
Clearly, the only acts of the defendants alleged in the original complaint to have resulted in emotional distress of the plaintiff relate to the emanation of excessive noise and vibration from the Rattlesnake premises into the plaintiff's residence. In the corresponding counts in the amended complaint dated June 1, 1998, one finds in Count Two, paragraph 10, and in Count Three, paragraph 11, the following additional language:
 "In addition, the Rattlesnake, its agents and employees engaged in additional conduct it knew, or should have known, would cause the plaintiff emotional distress in that they:
 a. Routinely made vulgar and obscene comments to the plaintiff as she entered and exited her building;
 b. Threatened her physically;
 c. On one occasion, spread a large amount of cooking grease along the rear stairwell, intending to cause serious injury to the plaintiff and/or other residents who had complained of loud noise."
 In Counts Six and Seven, paragraph 13, there appears the following allegation:
 "13. In addition to this misconduct, the defendant, William Opper, on one occasion left a message on the plaintiff's answering machine, threatening her physical safety."
The plaintiff claims that the original complaint contains CT Page 13851 general allegations of outrageous conduct, and that the amended complaint merely lists additional facts in support of the existing claim of infliction of emotional distress. (See plaintiff' s memorandum in opposition to defendants' motion to set aside the verdict, dated August 19, 1998, page 23). In fact, however, there are no "general allegations of outrageous conduct" in the original (revised) 1994 complaint, but rather only specific references to the noise and vibration emanating from the defendants' premises. The additional acts constitute new facts, requiring different evidence and proof, and not arising out of the first cause of action. Therefore, they do not relate back to the original complaint, and constitute a new and different cause of action which is time barred.
The defendants ask the court to set aside the verdict on Counts Two and Three because in awarding damages on these counts, the jury had before it evidence of these acts and conduct of the defendants which are barred by the statute of limitations. They claim that, having raised the issue by way of special defense, this evidence should not have been permitted, or that the jury should have been charged on the statute of limitations.
A motion to set aside the verdict "allows the trial court, in the less hectic atmosphere of the post-trial proceeding, to reconsider its rulings and if they are determined to have been erroneous as well as harmful, to grant a new trial without the necessity of an appeal." Sapporoso v. Aetna Life Casualty Co,221 Conn. 356, 363, 703 A.2d 1160 (1992). "Although a trial judge may set aside a verdict for misstatements in his charge to the jury, this must be done with great caution, and only if he is entirely satisfied upon an authoritative or statutory basis, that he has committed unmistakable error that has caused unquestionable harm." Sciola v. Shernow, 22 Conn. App. 351, 360,577 A.2d 1081, cert. denied, 216 Conn. 815, 580 A.2d 60 (1990). This court is satisfied that as a matter of law, the additional acts of the defendants in question were improperly allowed into evidence. Once allowed, the jury should have been charged that it was not to consider them in their deliberations because the statute of limitations had expired on the plaintiff's claims in respect thereto. As can be seen from the verdict form and the amended complaint (a copy of which was submitted to the jury) the jury could have considered the time-barred conduct of the defendants in arriving at their award in Counts Two and Three,[6] "causing unquestionable harm." See Sciola v. Shernow,Id., 360. CT Page 13852
 III.
The next question confronting the court is whether a new trial is required. It is answered in the negative, because whatever may be the basis of the jury's award on Counts Two and Three, even were it deemed to be an award limited to the intentional or negligent infliction of emotional distress by the noise and vibration caused by the defendants, and not to the barred additional acts, it cannot stand. The reason is that the award represents double damages, to which the plaintiff is not entitled. "[A] plaintiff may be compensated only once for his just damages for the same injury." Gionfriddo v. Gartenhaus Café,211 Conn. 67, 71, 557 A.2d 540 (1989); Virgo v. Lyons,209 Conn. 497, 509, 551 A.2d 1243 (1988); see also Peck v. Jacquemin,196 Conn. 53, n. 19, 491 A.2d 1043 (1985); ("An injured party is entitled to full recovery only once for the harm suffered.") The acts alleged in the allegations of negligence per se, are the same acts alleged in the allegations of negligent infliction of emotional distress.[7] The harm alleged to have been caused by the actions of the defendants in permitting the noise and vibration is the same in Count One, for negligence per se, as in Counts Two and Three, infliction of emotional distress.[8]
Thus, to allow the jury verdict as to Counts Two and Three to stand would be to permit the plaintiff to recover twice for the same injury, and therefore the motion to set aside the verdict as to these counts must be granted.
 IV.
The court next turns its attention to the jury verdict on Counts Six and Seven which was against William Opper for negligent or intentional infliction of emotional distress for noise and vibration and the telephone message. Mr. Opper was an employee of Rattlesnake involved in the hiring of the musicians responsible for the violation of the noise ordinance. As such, a verdict was rendered against him on Count Five, the negligenceper se count. The telephone message, which was on a tape received in evidence, could have been found by the jury to have threatened physical violence against the plaintiff. However, this allegation, like those made against other employees of the Rattlesnake for the abusive treatment of the plaintiff, was not made until June 1, 1998 in the amended complaint, long after the statute of limitations have expired. For the same reasons as set forth in Part II hereof, the jury should not have been given the CT Page 13853 opportunity to consider this allegation, and the $200, 000 award on these two counts must be set aside as duplicative of the award made against Opper on Count Five.
With respect to defendants' claim of evidentiary errors committed by the court. they have been reviewed and are found to be without merit.
 V.
Finally the court addresses the award against South Norwalk. This defendant has been defaulted and the jury was instructed to assess damages against it if the plaintiff had proven her injury. No motion was made by this defendant to set aside the verdict as to it, and the court takes no action with respect to this award.
In summary, for all the reasons set forth above, the court denies the defendants' motion to set aside the verdict and for a remittitur as to Counts One and Five, and grants the defendants' motion to set aside the verdict, made pursuant to Practice Book § 16-35, as to Counts Two, Three, Six and Seven. Thus, the jury verdict remains in the amount of $225,000 on Count One and Five of the plaintiff's amended complaint.
So Ordered.
D'ANDREA, J.